COMMONWEALTH vs. JOHN L. FESTA.

Middlesex. December 6, 1982. — March 22, 1983.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Homicide. Malice. Practice, Criminal,* Instructions to jury, Assistance of counsel.

At a murder trial which had proceeded solely on the issue of the identity of the perpetrator, the judge's unobjected-to reference, in his jury instructions, to a "presumption" of malice arising from the use of a deadly weapon did not, when considered in context, have the effect of shifting the burden of proof to the defendant on the issue of malice, or otherwise create a substantial likelihood of a miscarriage of justice. [514-515]

A defendant convicted of murder could not raise, by a motion for a new trial, an issue which he could have raised but did not raise either at trial or on his original appeal. [515-516]

A criminal defendant's claim that he had been deprived of his right to the effective assistance of counsel was not substantiated either by trial counsel's failure to move to suppress certain statements by the defendant, where the record showed no basis for suppression, or by a remark by counsel in closing argument, when considered in context. [516-517]

MOTION for a new trial filed in the Superior Court Department on September 19, 1980.

The proceeding was heard by *Hallisey*, J.

*Donald A. Harwood* for the defendant.

*Pamela L. Hunt*, Assistant District Attorney, for the Commonwealth.

ABRAMS, J. The defendant appeals[1] from the denial of his

---

[1] The record contains the first motion for a new trial and the judge's findings and rulings. No appeal from the denial of that motion was perfected. In this appeal, the issues raised by the first motion have not been briefed or argued. We deem Festa's failure to brief these issues as a waiver. An "appellate court need not pass upon questions or issues not

second motion for a new trial.[2]  See *Commonwealth* v. *Festa*, 369 Mass. 419 (1976).  Festa alleges error in the jury instructions and claims that he was denied the effective assistance of counsel.  On appeal, Festa asks us again to consider his case pursuant to G. L. c. 278, § 33E, and grant him a new trial or direct the entry of a verdict of a lesser degree of guilt.[3]  We affirm the order denying the second motion for a new trial.

Festa argues that the instructions by the judge pertaining to malice were prejudicially erroneous in light of decisions of this court and the Supreme Court of the United States, issued after the defendant's trial, direct appeal, or his first motion for a new trial.  He claims that conflicting instructions on the effect to be given the use of a deadly weapon require reversal.  Specifically, he asserts that in one portion of the supplemental instructions, the judge told the jurors that "[w]hen the killing is caused by the intentional use of a deadly weapon there arises a presumption of malice, at least in a situation where it is plain that the defendant had the victim in sight."  However, in his main instruction, the judge had already told the jurors that they could "infer malice from the use of a deadly weapon, such as a revolver, at least in the situation where the victim is in the view of the person charged."[4]  The defendant asserts that the word

argued in the brief."  Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975).  See *Commonwealth* v. *Cundriff*, 382 Mass. 137, 150 n.22, (1980), cert. denied, 451 U.S. 973 (1981).

[2] Since Festa was convicted of murder in the second degree, leave of the single justice is not required to appeal the denial of his motion.  *Commonwealth* v. *Zezima*, 387 Mass. 748, 749 (1982).  *Greene* v. *Commonwealth*, 385 Mass. 1008, 1009 (1982).  *Leaster* v. *Commonwealth*, 385 Mass. 547, 549 (1982).

[3] Since Festa's offense "resulting in a second degree murder conviction upon an indictment in the first degree was committed before July 1, 1979," he was entitled to G. L. c. 278, § 33E, review.  *Commonwealth* v. *Davis*, 380 Mass. 1, 15 (1980).

[4] Festa does not challenge the general instructions on the Commonwealth's burden of proof and the presumption of innocence.

"presumption" in the charge automatically requires reversal of his conviction. See *Sandstrom* v. *Montana,* 442 U.S. 510 (1979); *Commonwealth* v. *Callahan,* 380 Mass. 821 (1980). Since no objection to the charge was lodged at trial, the question is whether the instructions, read as a whole, created a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Tavares,* 385 Mass. 140, 148 (1982). We conclude that the charge did not create a substantial likelihood of a miscarriage of justice.

On appeal, we "view the charge in its entirety since the adequacy of instructions must be determined in light of their over-all impact on the jury." *Commonwealth* v. *Sellon,* 380 Mass. 220, 231-232 (1980). "The fact that on [one occasion] the judge lapsed into the use of the word 'presumption' when he obviously meant 'inference' [does] not detract from the otherwise thorough, accurate, and precise instructions on [malice]." *Commonwealth* v. *McInerney,* 373 Mass. 136, 150 (1977). As we read the charge, it did not impose on the defendant the duty to disprove malice.

Further, Festa's case was tried and argued by both parties solely on the issue of the identity of the perpetrator. In such circumstances a flaw in the malice instructions is less significant. "[T]he use of the word 'presumption' in the malice instructions [has] no bearing on [Festa's] guilt, and . . . the instructions [do] not create a danger of grave prejudice or a substantial likelihood of a miscarriage of justice." *Commonwealth* v. *Pisa,* 384 Mass. 362, 363-364 (1981). Festa's claim therefore fails. See *Commonwealth* v. *Greco,* 384 Mass. 799 (1981); *Commonwealth* v. *Tameleo,* 384 Mass. 368, 369-370 (1981); *Commonwealth* v. *Lee,* 383 Mass. 507, 512 (1981). See also *Connecticut* v. *Johnson,* 460 U.S. 73 (1983).

In this court Festa also claims error in the instructions because the judge failed to charge on provocation. Festa failed to raise this issue at trial or on his first appeal. "Issues not raised at trial or pursued in available appellate proceedings are waived." *Commonwealth* v. *Pisa,* 384 Mass. 362, 366 (1981). A motion for new trial may not be used as "a

vehicle to compel a trial judge to review and reconsider questions of law . . . which could have been raised at the trial and in appellate review after trial but which were not so raised." *Commonwealth* v. *McLaughlin,* 364 Mass. 211, 229 (1973).[5]

In this appeal, Festa further alleges he was denied the effective assistance of counsel since his counsel failed to move to suppress statements Festa made at the scene of the homicide, on the ground that the statements were involuntary because Festa was intoxicated and in shock.[6] The defendant concedes that there was no police coercion, and the defendant does not claim any physical or psychological coercion by civilians. Cf. *Commonwealth* v. *Mahnke,* 368 Mass. 662, 679-681 (1975), cert. denied, 425 U.S. 959 (1976).[7] The short answer is that the record does not disclose any basis to suppress the statements, and the authorities cited by the defendant do not support his claim. Since there is no apparent basis for the filing of a motion to suppress, there was no "serious incompetency, inefficiency, or inattention of counsel . . . falling measurably below that which might be expected from an ordinary fallible lawyer." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974).

---

[5] Provocation as a mitigating circumstance was not adequately raised in the evidence, and the judge indicated he was submitting voluntary manslaughter to the jury out of an abundance of caution. Further, "[t]he repeated failures of counsel [at trial, on appeal, and in the two motions for new trial] to raise the point suggest that it was not thought to be critical." *Commonwealth* v. *Grace,* 381 Mass. 753, 760 (1980). We agree with counsel's prior assessment.

[6] At the scene, the defendant placed a pillow under the victim's head and said, "You'll be all right. You'll be all right. I'm sorry." He also said, "I'm helping you, Al. . . . I'm sorry, Al. I'm sorry, Al." Festa kept repeating, "I'm sorry, Al. I'm sorry, Al."

[7] The defendant neither briefs nor argues the issue "whether a judge is ever required to determine the voluntariness of statements to civilians in circumstances that fall short of coercion." *Commonwealth* v. *Vazquez,* 387 Mass. 96, 101 n.9 (1982). Hence, we do not reach or decide that issue. See Mass. R. A. P. 16 (a) (4); *Commonwealth* v. *Cundriff,* 382 Mass. 137, 150 n.22 (1980).

The defendant alleges that his counsel was ineffective because in his summation his counsel stated that "the defendant didn't present much of a case here." That statement, however, must be viewed in context. Festa's attorney went on to point out that Festa's "statement was already in, what he told the police, so that covers that part of it." He then went on to criticize the Commonwealth for not offering in evidence the victim's statement exculpating the defendant.[8] Considered in the context of the closing argument, this sentence does not demonstrate that the defendant had ineffective assistance of counsel. Compare *Commonwealth* v. *Street, ante* 281 (1983); *Commonwealth* v. *Westmoreland, ante* 269 (1983).

---

[8] The closing, in pertinent part, reads as follows: "Now, the defendant didn't present much of a case here. His statement was already in, what he told the police, so that covers that part of it. But we were in a quandary originally regarding a statement made by the deceased. I didn't know where it was coming in or how it was coming in. But in any event, the Commonwealth didn't put that statement in, and I think that's very important for you to decide. Very important; very, very important that that statement by the deceased, Mr. Abruzzese — who put it in? Did the Commonwealth put it in or the defendant put it in as his case? The defendant put it in. The Commonwealth rested yesterday. I had to put the statement in. And I would be willing to bet you every buck in your pocket now if Mr. Abruzzese said 'John did it,' that would have been the first statement put in. Al Abruzzese didn't say 'John did it.' They didn't want that statement any more than the Man in the Moon. We have to really analyze the statement, because this is the statement of the deceased. He was one of the persons, the participants; he was there. He got shot. He observed what happened.

"What did the statement say? Your memory is probably better than mine, but he was asked a series of questions by Detective-Lieutenant Card at the hospital — a dying declaration is what it's known as. A dying declaration is something when someone is dying they have a tendency to tell the truth. That's what this means. They asked Mr. Abruzzese on the couch or the stretcher, 'What happened? What happened? Did Festa shoot you? Did John shoot you?' 'No,' is the first word he said, 'No, John didn't shoot me. He's a friend of mine,' he said. I believe the lieutenant said that sometimes he was coherent, sometimes he was incoherent. They know his condition. He was shot in the head. But he answered these questions. They wrote them down. And I think he ended up by saying how 'John wouldn't do it. Of course he wouldn't do it. John is a good friend of mine. He wouldn't shoot me. He didn't shoot me.'"

Consistent with our duty under § 33E, we reviewed the entire case on the law and the evidence and concluded that the interests of justice did not require a new trial or the entry of a verdict of a lesser degree of guilt than that found by the jury. *Commonwealth* v. *Festa,* 369 Mass. 419, 420 (1976).[9] The defendant requests that we reconsider his case pursuant to G. L. c. 278, § 33E, and either grant him a new trial or reduce the verdict of murder in the second degree to manslaughter. We again decline to exercise our power under § 33E in favor of the defendant.

*Order denying motion for*
*new trial affirmed.*

---

[9] The original appeal was reviewed pursuant to G. L. c. 278, §§ 33A-33G, including § 33E. See *Commonwealth* v. *Festa,* 369 Mass. 419, 420 (1976).